UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY TROVER PRODUCE, INC.,

    Plaintiff,

        v.

NUTRIEN AG SOLUTIONS, INC.,
NUTRIEN, LTD., OMNILYTICS, INC.,
AND CERTIS USA, INC.,

    Defendants.

Case No. 3: 21-cv-1035-JPG

# MEMORANDUM AND ORDER

## I. Introduction

This matter comes before the Court on two Motions to Dismiss. Defendant Certis U.S.A. L.L.C. ("Certis")[1] filed a motion to dismiss because Plaintiff Larry Trover Produce, Inc. ("Plaintiff" or "Trover") fails to state a claim against Certis and should be dismissed (Doc. 13) pursuant to 12(b)(6). Plaintiff responded at (Doc. 23). Defendant OmniLytics, Inc. ("OmniLytics") also moves to dismiss because Plaintiff fails to state a claim against OmniLytics for a failure to state a claim pursuant to 12(b)(6). (Doc. 20). Plaintiff responded at (Doc. 24). The Court will address both of these motions.

## II. Background

Plaintiff is a Florida corporation, with its principal place of business in Vienna, Illinois. Trover is engaged in farming operations, primarily with the growing and production of tomatoes and other vegetables in Johnson County, Illinois. Comp ¶¶ 1-3.[2] Plaintiff decided to spray

---

[1] Certis states that Plaintiff has incorrectly named "Certis USA, Inc." in this action, which is a non-existent entity. The correct entity is "Certis U.S.A. L.L.C."

[2] The notice of removal does not contain page 2 of Plaintiff's Complaint. Additionally, Plaintiff's Complaint has been misnumbered or have re-started in numbering. The Court, when referring to a misnumbered section of the Complaint, will refer to the Count of the Complaint.

1

Agriphage products on its tomato crop to prevent bacterial spot and bacterial canker. Comp ¶ 12. Plaintiff states that that OmniLytics, Certis and Nutrien, LTD, and Nutrien Ag Solutions, Inc. were entities "manufactured, distributed and purchased the Agriphage products." Comp ¶ 9. On June 18, 2020, Plaintiff ordered two products from Nutrien Ag ("Nutrien") – Agriphage Tomato Spot, which is a product intended to prevent "tomato spot" infestation on plants, and Agriphage CMM, which is a product intended to prevent "bacterial canker" on tomato plants. Comp ¶¶ 15-16. "Bacterial canker" can render the plants diseased and unmarketable. While for the past seven years Plaintiff dealt with OmniLytics when purchasing products, in June 2020, Plaintiff was directed to deal with Nutrien Ag. Comp ¶ 11. During these seven years, Plaintiff had generally gotten favorable results warding off the bacterial canker. Comp ¶ 27. The invoice price for this June 18, 2020, order was for $1,255. Comp ¶ 13.

      Plaintiff received the first order of the 10 gallons of Agriphage products, and applied the product to the tomato plants, but the tomato plants began showing signs of infection. Comp ¶ 21. On July 2, 2020, Plaintiff placed an order to address the increase presence of the bacterial canker. Comp ¶ 22. The second order was for an additional 25 gallons of Agriphage CMM and $3,137. This July shipment was delivered one week after Plaintiff placed the order. Comp ¶ 23. Plaintiff applied the second shipment to his tomato crops but the crops continued to show signs of bacterial canker. Comp ¶ 21. Plaintiff discovered that the two Agriphage CMM shipments were past the expiration date stated on the packaging. Comp ¶¶ 25-26. Plaintiff states that it was told by Defendants that the Ariphage was to be "fresh" and stored in a cool place and whenever Plaintiff received the product, it would store the product in a cool environment. Plaintiff states that the bacterial canker destroyed the majority of Plaintiff's tomato crops and caused $300,000 in losses. Comp ¶¶ 31, 58.

Plaintiff filed a complaint, alleging the following counts:

- Count I - Violation of Express Warranty 810 ILCS 5/2-313 against all Defendants
- Count II – Breach of Implied Warranty of Merchantability 810 ILCS 5/2-314 against all Defendants
- Count III – Fraudulent Misrepresentation against all Defendants
- Count IV – Violation of Illinois Consumer Fraud and Deceptive Business Practices against all Defendants
- Count V – Negligence against all Defendants
- Count VI – Breach of Contract as to all Defendants
- Count VII – Breach of Implied Warranty: Fitness for Particular Purpose (810 ILCS 5/2-315) as to all Defendants

Certis filed a Motion to Dismiss on the general basis that Certis is a "wholly different company and a stranger to the transactions at issue." (Doc. 14, p. 5). OmniLytics filed a Motion to Dismiss separately, stating that "Plaintiff does not allege a contractual relationship between it and OmniLytics, nor does it allege any communications between it and OmniLytics prior to the purchase of the allegedly expired product." (Doc. 21, p. 5).

### III.   Law and Analysis

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). The plaintiff "must do more in the complaint than simply recite the elements of a claim." *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). Complaints that offer "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

    a. **Certis' Motion to Dismiss**

First, Defendant Certis argues that Plaintiff has not plead or allege any claim against Certis (Doc. 14, p. 8). Specifically, Certis states that Plaintiff's Complaint rests entirely on the allegation it purchased two shipments of Agriphage CMM from Nutrien Ag, but that those shipments turned out to be ineffective. Thus, Plaintiff does not allege Certis has any involvement in the transaction. *Id*. Plaintiff responds by stating that Nutrien, Ltd. and Nutrien Ag Solutions, Inc., co-Defendants in this matter, filed an answer to the Complaint that admits Nutrien Ag Solutions Inc., purchased Agriphage products at issue from Certis. (Doc. 23, p. 3); (Doc. 18 at ¶

9).

The Court agrees. While the Court must look at the complaint, a plaintiff has "much more flexibility in opposing a Rule 12(b)(6) motion." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012). If district courts are allowed to look at new allegations based on documents as long as the "new elaborations are consistent with the pleadings," the court may look at pleadings of other co-defendants to elaborate on Plaintiff's Complaint. *Id*. Nutrien's answer elaborates on the relationship between Certis and Nutrien. (Doc. 18 at ¶ 9). The Court will not dismiss all claims in this case without reviewing each and every cause of action based on a lack of involvement of Certis. The Court will review each cause of action to determine whether Plaintiff has met its burden.

### b. Breach of Contract (VI)

Defendants Certis and OmniLytics argue that Plaintiff has not adequately alleged a breach of contract claim against them (Doc. 14, p. 10); (Doc. 21, p. 7). Plaintiff responds by stating that it has broadly referred collectively to all Defendants but that "[u]ntil discovery is complete, Plaintiff must rely on the limited publicly-available documentation regarding the extent of each Defendant's involvement." (Doc. 23, p. 4); *see also* (Doc. 24, p. 3).

Under Illinois law, a breach of contract claim requires a plaintiff to establish the following elements: (1) a contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020), reh'g denied (Sept. 4, 2020). ("In Illinois, as elsewhere, the first prerequisite to a successful breach of contract claim is an obvious one: there must be a contract between the parties." *Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d 1124, 1127 (7th Cir. 2014)). In general, a district court is limited to the four corners of the

complaint when deciding a motion to dismiss. An exception exists, however, "where a complaint or an attachment to the complaint expressly refers to another document, such as a contract," and in those cases, the Court "can consider the referenced contract." *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 916 n.2 (N.D. Ill. 2003). Thus, the Court is able to refer to the contract here (Doc. 23, Exhibit 2-3). Based on the Court's review of the invoices here, which presumably make up the contract, the Court finds that neither Certis nor OmniLytics were parties to this contract. Specifically, Plaintiff's Complaint does not allege that a contract between Certis and OmniLytics existed and the Court, upon reviewing the contract, does not see either of those parties named. Plaintiff must "allege facts establishing that the parties exchanged an offer, an acceptance, and consideration." *Simoni v. United Airlines Holdings, Inc.*, No. 21-CV-1267, 2022 WL 407713, at *2 (N.D. Ill. Feb. 10, 2022).

Additionally, Plaintiff states that it dealt with OmniLytics for the past seven years and did not have an issue. However, the contract that Plaintiff is suing is over the products it purchased from Nutrien. The past seven years of purchases is not at issue in here and Plaintiff makes no allegations that harm was caused as a result of actions other than the transaction regarding these two products.

Here, Plaintiff states that more discovery can assist to determine defendants' involvement. The Court disagrees. The basis of a breach of contract claim is the existence of a contract. Plaintiff should already know who it entered into a contract with, presumably because there were conversations regarding an offer, acceptance, and consideration. While the other defendants could have had a separate arrangement, which the Court will not speculate on, Plaintiff cannot enter into a contract with parties it did not know it existed at the time of the contract.

Plaintiff's complaint states that Nutrien was an "agent." Plaintiff does not address this issue in their response. (Doc. 23); (Doc. 24). However, "[a]lthough the trier of fact most often answers whether particular facts giving rise to an agency relationship exist, "a plaintiff must still plead facts, which, if proved, could establish the existence of an agency relationship." *Peterson v. H & R Block Tax Servs., Inc.*, 971 F. Supp. 1204, 1213 (N.D. Ill. 1997). Plaintiff fails to do so. Additionally, simply stating that Defendants were agents of each other, without more, is not a sufficient showing that manifests an agency relationship. *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (finding Warciak's complaint lacks sufficient showing that Subway manifested to the public that T-Mobile was its agent and thus failed to create apparent authority by failing to trace statements to the principal's manifestations or control). Thus, the Court cannot provide the Plaintiff any reasonable inferences since it fails to address this argument.

The Court hereby **GRANTS** Defendants Certis and OmniLytics' Motion to Dismiss Count VI for Breach of Contract.

    **c.  Breach of Express Warranty Under 810 ILCS 5/2-313 (Count I)**

Defendant Certis and OmniLytics state Plaintiff does not state a claim for breach of express warranty (Doc. 14, p. 6-7); (Doc. 21, p. 3-5).

To state a claim for breach of express warranty in Illinois, plaintiffs must allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the

affirmation or promise." 810 ILCS § 5/2-313(1)(a).

A claim for breach of express warranty, like a claim for breach of implied warranty, requires privity of contract. *Manley v. Hain Celestial Grp.*, Inc., 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019). Under Illinois law, a party without a warranty assignment must be in privity of contract to enforce an express warranty alleging economic loss. *Collins Co. v. Carboline Co.*, 837 F.2d 299, 301 (7th Cir.), certified question answered, 125 Ill. 2d 498, 532 N.E.2d 834 (1988) ("a party without a warranty assignment must be in privity of contract to enforce an express warranty alleging economic loss").

Plaintiff fails to address if it is subject to an exception to the privity requirement – such as the "direct relationship exception" [3] or the "third-party beneficiary exception." Thus, the Court finds that Plaintiff has failed to meet the privity requirement. *Katz v. Orlick*, 89 F.3d 838 (7th Cir. 1996) (the Court "will not take it upon itself to construct legal arguments for a party").

However, Plaintiff does not make any claim it had a direct relationship or is in privity against Certis or OmniLytics. While the "privity inquiry is fact-intensive," *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016), Plaintiff does not respond to Defendant's privity arguments, Plaintiff rests on stating more discovery is needed and the Court should evaluate this issue at a summary judgment phase. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."). The Court disagrees. As the Seventh Circuit and the Supreme Court have made clear, at the pleading stage, a plaintiff must plead "factual content that allows

---

[3]   *See e.g. In re* VTech Data Breach Litigation, No. 15 CV 10889, 2018 WL 1863953, at *5 (N.D. Ill. Apr. 18, 2018); *Guajardo v. Skechers USA, Inc*., 503 F. Supp. 3d 746, 753 (C.D. Ill. 2020). Our sister courts across this state have interpreted this exception to the privity requirement to apply to "recent federal cases ... have interpreted [the exception] as applying to circumstances in which manufacturers advertise[d] directly to consumers" but concluding that it was not clear that "the Illinois Supreme Court would ... [agree]").

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher*, 880 F.3d at 366. Plaintiff's assertions, that it should be allowed to bring any of its claims against any of the defendants until it finally receives discovery to support its claims, taken to its logical conclusion, would render *Twombly* and *Iqbal* meaningless.

Plaintiff Complaint states that Defendants breached the express warranty on the product description. Compl at ¶¶ 28, 37-39. Specifically, Plaintiff states "Defendant, OmniLytics on its label, affixed to the product shipped to Plaintiff, specifically stated that Agriphage CMM is "Bactericide for use on tomato plants…[Biological bactericide for the suppression of backterial stem canker on greenhouse tomatoes]" [sic]. *Id.* at ¶ 39. Plaintiff further cites the "DIRECTIONS FOR USE" which states the Agriphage-CMM is a bactericide used as a preventative and curative product for the suppression of bacterial canker on greenhouse tomato…" *Id*. Defendant OmniLytics states Plaintiff ignores the Warranty Statement, reproduced below:

> WARRANTY STATEMENT: OmniLytics, Inc. warrants that this material conforms to the description on the label and is reasonably fit for the purposes referred to in the Directions for Use. To the extent consistent with applicable law OmniLytics, Inc. makes no other express or implied warranty of fitness or merchantability or any other express or implied warranty. To the extent consistent with applicable law, in no case or circumstance shall OmniLytics, Inc. or seller be liable for consequential, special or indirect damages resulting from the use or handling of this product including but not limited to, loss of profits, business reputations, or customers; labor cost; or any other expenses incurred in planting, cultivating or harvesting.

Plaintiff argues that OmniLytics admits that it warranted the product is "reasonably fit for the purposes referred to in the Directions for Use." The Court agrees with Plaintiff at this time. In light of the longstanding relationship between OmniLytics, the fact that its name is on the label affixed on the product, and there is a warranty statement that the product is "reasonably fit for the purposes referred to in the Directions for use" would be enough to defeat dismissal at this stage if Plaintiff properly alleged privity. However, it has failed to do so.

For these reasons, the Court GRANTS Certis and OmniLytics' Motions to Dismiss Count I under a Breach of Express Warranty.

### d. Breach of Implied Warranty under 810 ILCS 5/2-314–15 (Counts II & VII).

Plaintiff alleges two breaches of implied warranties – implied warranty of merchantability under implied warranty of merchantability under 810 ILCS 5/2-314 and implied warranty of fitness for a particular purpose under 810 ILCS 5/2-315.

To state a claim for breach of implied warranty of merchantability, plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. *Indus. Hard Chrome. Ltd. v. Hetran, Inc*., 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999) (citing 810 ILCS 5/2-314). For claim for breach of implied warranty of fitness for particular purpose to survive motion to dismiss under Illinois law, plaintiff must allege (1) sale of goods, (2) that seller had reason to know of any particular purpose for which goods are required, (3) that plaintiff, as buyer of goods, was relying upon seller's skills or judgment to select suitable goods, and (4) that goods were not fit for particular purpose for which they were used. 810 ILCS 5/2-315. *Cameron v. Battery Handling Sys., Inc*., 524 F. Supp. 3d 860 (C.D. Ill. 2021).

In Illinois, "whether a complaint bringing claims for breach of the implied warranty of merchantability and fitness for a particular purpose, the plaintiff must plead vertical privity to survive a motion to dismiss depends on the nature of the injury alleged." *Ali v. Volkswagen Grp. of Am., Inc*., No. 19 C 6148, 2021 WL 4146870, at *5 (N.D. Ill. Sept. 13, 2021) (internal citations omitted). Where a plaintiff alleges only economic damages, "he or she must be in vertical privity of contract with the seller," meaning "only the immediate seller may be sued." *Id*. See also *Voelker v. Porsche Cars N. Am., Inc*., 353 F.3d 516, 525-26 (7th Cir. 2003) (citing

*Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292, 116 Ill.Dec. 207, 518 N.E.2d 1028, 1029-30 (1988)) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty.").

Both Certis and OmniLytics were not the immediate sellers of the product and Plaintiff does not claim how it is in vertical privity with either of these companies. Plaintiff, in response, states that "[e]ach Defendant deals in the manufacture, sale, and/or distribution of these goods." (Doc. 23, p. 4). This is non-responsive to the fact neither of the parties were a direct seller of the product at issue.

For these reasons, the Court **GRANTS** Certis and OmniLytics' Motions to Dismiss Breaches of Implied Warranty of Merchantability (Count II) and Implied Warranty of Fitness for a Particular Purpose (Count VII).

### e. Common Law Fraudulent Misrepresentation (Count III)

Defendants Certis and OmniLytics also state that Plaintiff has failed to adequately plead common law fraudulent. (Doc. 14, p. 9); (Doc. 21, p. 6). Plaintiff responds stating it has adequately alleged fraudulent misrepresentation by stating "'The Defendants, and each of them, intentionally, through its agents and employees knowingly stated the following material facts...' specifically alleging said statements were false." (Doc. 23, p. 5); (Doc. 25, p. 5).

To survive a motion to dismiss for common law fraudulent misrepresentation, a plaintiff must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (internal citations omitted). In Illinois, a defendant knowingly misrepresents a fact if it makes a statement

"with a reckless disregard for its truth or falsity." *Id*. Under the heightened federal pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff "alleging fraud ... must state with particularity the circumstances constituting fraud." *Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507 (7th Cir. 2007) ("This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Wigod v. Wells Fargo Bank, N.A*., 673 F.3d 547, 569 (7th Cir. 2012).

      Plaintiff's Complaint states that "Stuart Brenneman, acting as a sales agent and representative for Nutrien, Ltd, Nutrien Ag" made false promises regarding the delivery and effectiveness of the two Agriphage shipments at issue. (Comp at ¶¶ 77, 82). Plaintiff also states that "Defendants" made similar statements, although, similar to the rest of the complaint, Plaintiff does not distinguish or detail which Defendant made what statement. "In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief." *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (internal citations omitted). Such evidence would include a "a pattern of fraudulent statements, or one particularly egregious fraudulent statement." *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011) (internal citations omitted).

      The Court finds that Plaintiff's allegations are insufficient to meet the heightened pleading requirements under the federal rules. Specifically, Plaintiff's allegations fail to allege that Certis or OmniLytics made any false statements. Lumping Defendants together as if they all made false statements is the type of statements that this heightened pleading requirement attempts to prevent. Additionally, while the Court does not make any findings regarding Stuart Brenneman's assertion regarding the delivery or effectiveness of the products, the Court has

doubts that such a statement meets either a pattern of fraudulent statements or a "particularly egregious fraudulent statement." *BPI Energy Holdings*, 664 F.3d at 136. However, finding that neither Certis nor OmniLytics made the alleged false statement, Plaintiff has failed to state a claim against them for common law fraudulent misrepresentation.

For these reasons, the Court **GRANTS** Certis and OmniLytics' Motions to Dismiss Count III for Fraudulent Misrepresentation.

### f. Consumer Fraud and Deceptive Business Practices Claim (Count IV)

Defendants Certis and OmniLytics argue that Plaintiff has failed to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). (Doc. 14, p. 10); (Doc. 21, p. 7). Plaintiff responds by incorporating the fraudulent misrepresentations stated previously and states that it its allegations are sufficient (Doc. 23, p. 5). In response to OmniLytics, Plaintiff states that the Complaint adequately alleges a claim under ICFA claim by alleging "Defendants made various assurances to Plaintiff that the product at issue would be delivered in a timely manner, the product would be fresh, and when the product sold to Plaintiff was not fresh, Defendants encouraged Plaintiff to purchase more of the same product, from the same defective batch, which was again delivered after expiration. (Comp at ¶ 92); (Doc. 24, p. 5).

To state a claim under a claim under ICFA, a plaintiff must plead "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Cummings v. TVI, Inc.*, No. 19-CV-1082-JPG, 2020 WL 1065433, at *2 (S.D. Ill. Mar. 5, 2020) (internal citations omitted). Plaintiff alleges "Defendants committed unfair and/or deceptive practices" (Comp at ¶ 92). If Plaintiff alleges deceptive conduct, a plaintiff must plead with

particularity the circumstances constituting fraud. Specifically, the complaint must identify "who, what, when, where, and how" of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). On the other hand, unfair conduct requires a plaintiff to allege any three of the following factors – whether the practice "offends public policy"; is "immoral, unethical, oppressive, or unscrupulous"; or "causes substantial injury to consumers." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). And because fraud is not a required element, Rule 9(b)'s heightened pleading standard does not apply. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Regardless of whether the Plaintiff is alleging an unfair practice or a deceptive practice, Plaintiff's claim still fails against Certis and OmniLytics because Plaintiff fails to allege any deception or deceptive act by Certis or OmniLytics. While Plaintiff alleges that Stuart Brenneman, acting as a sales agent and representative for Nutrien, Ltd, Nutrien Ag" made false promises regarding the delivery and effectiveness of the two Agriphage shipments at issue. (Comp at ¶¶ 77, 82), this was an employee of Nutrien and not Certis or OmniLytics. Thus, Plaintiff does not sufficiently plead under the heightened pleading standard against the particular Defendants it is suing. If Plaintiff is alleging unfair conduct, makes no claims that such an unfair practice meets any of the three following factors above. The Court finds Plaintiff's complaint, and its responses to Defendant's motions to dismiss, insufficient to state a claim against these particular defendants.

For these reasons, the Court **GRANTS** Certis and OmniLytics Motions to Dismiss Count IV under Illinois Consumer Fraud and Deceptive Business Practices Act.

g. **Negligence (Count V)**

Defendant Certis argues Plaintiff's claim for negligence fails because merely asserting a

product is defective is a legal conclusion and not a factual allegation (Doc. 14, p. 11). Defendant OmniLytics additionally states Plaintiff's claim fails under the economic loss theory (Doc. 21, p. 8-9). Plaintiff responds by stating it has sufficiently pled Defendant's involvement in manufacture, sale, delivery etc. (Doc. 23, p. 5). Additionally, Plaintiff argues that it qualifies for any exception of the economic loss theory (Doc. 23, p. 5-6).

Generally, under *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), plaintiff cannot recover for solely economic loss under tort theories of strict liability, negligence, and innocent misrepresentation. *Id*. In that case, the Illinois Supreme Court was concerned that allowing such negligence suits for purely economic loss would lead to tort law enveloping contract law. *Id*. Nevertheless, the court identified three exceptions to its holding, which is now commonly known as the *Moorman* doctrine: "(1) where the plaintiff sustained personal injury or property damage resulting from a tortious event, i.e., a sudden or dangerous occurrence; (2) where plaintiffs damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Wheaton Theatre, LLC v. First Am. Title Ins. Co.*, 354 F. Supp. 3d 904, 907–08 (N.D. Ill. 2018) (cleaned up). Plaintiff states that all the exceptions "arguably" apply in this case. (Doc. 23, p. 5).

Without more, Plaintiff's claim fails. Given that the Court has dismissed claims for breach of contract (where Plaintiff's claims of negligence are the exact same for its breach of contract) and determined that Plaintiff has inadequately pled fraud against Certis and OmniLytics, the Court must dismiss Plaintiff's claim of negligence against these Defendants.

Even though Plaintiff does not explain how each exception may apply, the Court will do

so. First, the Plaintiff alleges no personal injury here. Additionally, the type of damage here is not the type anticipated by Illinois progeny. *Moorman Mfg. Co.*, 91 Ill. 2d 69, 88, 435 N.E.2d 443, 451 ("When the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery."). Additionally, since Plaintiff's contract claim has failed, its negligence claim must also. Second, the Court has already found that Plaintiff has insufficiently alleged that Defendants Certis and OmniLytics made an intentional or a false representation or fraud. Also, Plaintiff does not fit the third exception. *Anderson Elec. v. Ledbetter Erection Corp.,* 115 Ill. 2d 146, 503 N.E.2d 246 (1986) ("it simply cannot be said [that defendant] was in the business of supplying information for the guidance of others in business transactions and had made negligent misrepresentations."). In short, Illinois courts require more than Plaintiff has provided this Court.

For these reasons, the Court **GRANTS** Certis and OmniLytics' Motions to Dismiss Count V for negligence.

### IV. Conclusion

The Court hereby:

- **GRANTS** Defendant Certis' Motion to Dismiss Counts I-VII (Doc. 13);
- **GRANTS** Defendant OmniLytics' Motion to Dismiss Counts I-VII (Doc. 20);
- **DISMISSES** Defendant Certis and OmniLytics from this case.

**IT IS SO ORDERED.**
**Dated: February 28, 2022**

/s/ J. Phil Gilbert
J. PHIL GILBERT
DISTRICT JUDGE